IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**SCOTTIE HENRY**                                                                    **PLAINTIFF**

**V.**                            **NO. 4:16-CV-00240-BD**

**NANCY A. BERRYHILL, Acting Commissioner**
**Social Security Administration**                                               **DEFENDANT**

## ORDER

**I.   Introduction:**

   Plaintiff, Scottie Henry, applied for disability benefits on September 24, 2012, alleging disability beginning on March 20, 2006. (Tr. at 32) After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 50) The Appeals Council denied his request for review. (Tr. at 1) The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Henry has requested judicial review.

   For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II.   The Commissioner's Decision:**

   The ALJ found that Mr. Henry had not engaged in substantial gainful activity since the application date of September 24, 2012. (Tr. at 34) The ALJ found, at Step Two of the five-step sequential analysis, that Mr. Henry had the following severe impairments:

---

[1]The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

lumbar spine degenerative disc disease s/p remote discectomy, diabetes, diabetic peripheral neuropathy, affective disorder, and anxiety disorder. *Id.*

After finding that Mr. Henry's impairments did not meet or equal a listed impairment (Tr. at 37), the ALJ determined that Mr. Henry had the residual functional capacity ("RFC") to perform light work at the unskilled level with additional limitations. (Tr. at 39) He could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and push and/or pull 20 pounds occasionally and 10 pounds frequently. *Id.* He could understand, remember, and carry out simple job instructions, make judgments in simple work-related situations, respond appropriately to co-workers/supervisors, and respond appropriately to minor changes in the usual work routine. *Id.*

The ALJ found that Mr. Henry had no past relevant work. (Tr. at 49) Finally, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Mr. Henry's age, education, work experience and RFC, Mr. Henry was capable of performing work in the national economy. *Id.* Based on that determination, the ALJ held that Mr. Henry was not disabled. (Tr. at 50)

## III.   Discussion:

### A.   Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

"Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B.   Mr. Henry's Arguments on Appeal

Mr. Henry argues that substantial evidence does not support the ALJ's decision to deny benefits because the ALJ did not incorporate relevant VE testimony in his decision, did not tailor the RFC to Mr. Henry's actual mental limitations, did not assign proper weight to treating and examining physicians, and did not conduct a proper credibility analysis.

Mr. Henry suffered from mental illness for years, evidenced by multiple hospitalizations, low Global Assistive Functioning ("GAF") scores, consistent professional counseling, and multiple medication adjustments. In 1992, Mr. Henry was hospitalized for suicidal ideation. (Tr. at 344-346) In 2007, he was admitted to St. Vincent's acute psychiatric unit for suicidal thoughts. (Tr. at 1050-1090) His GAF upon admission was 25, and he stayed in the hospital for three days.[2] *Id.* In September 2008,

---

[2] GAF scores in the 21-30 range indicate inability to function in almost all areas, and

Mr. Henry returned to the emergency room with suicidal ideation. (Tr. at 1032) In October and November 2009, Mr. Henry was again seen in the emergency room at St. Vincent Infirmary for suicidal ideation. (Tr. at 768-771, 899-902, 996-1001, 1026-1028)

Mr. Henry began counseling sessions at Professional Counseling Associates in early 2009, which he continued intermittently through late 2011. (Tr. at 467-508, 1359-1404) On January 29, 2009, he tested in the high range for distractibility and inattention. (Tr. at 1359) On November 5, 2009, he reported trouble sleeping, hearing voices, seeing figures, and having impulse control problems. (Tr. at 1364) His provider at Professional Counseling Associates noted a history of legitimate bipolar disorder with psychotic features, in the absence of substance abuse or intoxication. *Id.*

On December 16, 2009, Mr. Henry reported that his medications were not helping, and that he would lie in bed all day and self-isolate. (Tr. at 1370) On February 1, 2010, he reported trouble sleeping and exhibited flight of ideas. (Tr. at 506) On March 30, 2010, he reported suicidal and homicidal thoughts with increasing fear at night. (Tr. at 503)

In May 2010, Mr. Henry was admitted to Rivendell Behavioral Health for auditory hallucinations with voices telling him to kill himself and harm his family. (Tr. at 368-466) He stayed in the hospital for five days. *Id.* At admission, his GAF score was 15-20, and upon discharge it was only 30 (Tr. at 43, 370) Upon discharge, while Mr. Henry

---

scores in the 31-40 range indicate major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. (Tr. at 48)

4

denied further suicidal ideation, his insight and judgment were poor and his response to treatment was minimal at best. (Tr. at 371)

Mr. Henry continued with counseling, reporting on July 21, 2010 that his depression was worse. (Tr. at 479) On April 10, 2011, he felt more manic, with increased racing thoughts and flight of ideas. (Tr. at 480) On June 29, 2011, Mr. Henry told his provider that he could not take Depakote anymore because it made him feel very ill. (Tr. at 479) The Court notes that over the relevant time period, various medical providers adjusted his medications on a regular basis, but medications rarely gave him consistent relief over an extended period of time.

On November 2, 2012, Gem Moore, Ph.D., conducted a mental consultative examination. (Tr. at 576-580) She noted three prior suicide attempts. (Tr. at 576) Mr. Henry's speech was very fast and he sometimes stuttered. (Tr. at 578) He reported seeing creatures and hearing voices telling him to harm himself and others. *Id.* Dr. Moore noted that Mr. Henry only changed clothes every few days, did not brush his teeth, and spent money without thinking. (Tr. at 579) He told her he had no friends. *Id.* While Mr. Henry's mental status was fair and he did sufficiently well on some intelligence testing, he had problems with immediate auditory recall. (Tr. at 580) Dr. Moore concluded that he had significant problems with concentration and was unable to sustain persistence in completing tasks due to loss of interest and loss of focus. *Id.* She opined that he would not be able to complete tasks within an acceptable timeframe. *Id.*

In December 6, 2013, Mr. Henry checked in to St. Vincent Hospital emergency room, again for suicidal ideation. (Tr. at 1245-1250) His GAF score was 25 and he was released the following day. *Id.*

The only opinion evidence concerning mental limitations other than that from Dr. Moore is the evidence from state-agency medical consultants, who did not have the benefit of a face-to-face examination. Both consultants limited Mr. Henry to unskilled work, with simple and repetitive tasks, where interpersonal contact is incidental to the work performed and the supervision required is simple, direct, and concrete. (Tr. at 128, 145)

The ALJ posed several hypotheticals to the VE. When he focused on Mr. Henry's persistence and concentration problems, as identified in Dr. Moore's report, the VE concluded there would not be available employment for such a person. Specifically, the ALJ asked if there would be work available if a person could not sustain concentration and attention for a two-hour interval during the workday. (Tr. at 109) The VE responded that there would not. *Id*. The ALJ further inquired about a person having to miss more than two days of work per month. (Tr. at 110) Again, the VE said there would be no work available. *Id*. Finally, the ALJ asked about a requirement for direct supervision at least one-third of the work day. *Id*. The VE responded that there would be no available jobs.

A hypothetical question is properly formulated if it sets forth impairments "supported by substantial evidence in the record and accepted as true by the ALJ."

6

*Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). VE testimony constitutes substantial evidence when, as here, it is in response to a hypothetical that captures all the concrete consequences of a claimant's impairments. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011). The ALJ gave great weight to the opinion of Dr. Moore, who opined that Mr. Henry could not sustain attention and concentration in the completion of work-day tasks. Dr. Moore stated that Mr. Henry would "not be able to complete tasks within an acceptable timeframe." (Tr. at 580) Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. (Tr. at 38) Relying on the evidence concerning concentration and persistence from Dr. Moore, the ALJ phrased proper hypotheticals to the VE. In response, the VE testified that no jobs would be available. The ALJ found Mr. Henry not disabled at Step Five, ignoring the vocational evidence.

    Dr. Moore's opinion, to which the ALJ assigned great weight, was supported by evidence of hospitalizations, low GAF scores, and inconsistent response to a variety of medication regimens. Mr. Henry's long-term mental health treatment confirms he suffered from significant limitations. It is unclear why the ALJ concluded that Dr. Moore's opinion was supported by evidence in the record and phrased a hypothetical reflecting that opinion, but then failed to incorporate the VE's testimony into his

decision. Because the ALJ's conclusions at Step Five are not supported by the evidence, remand is proper.

## IV.  **Conclusion:**

The ALJ's decision is not supported by substantial evidence. The ALJ failed to meet his burden at Step Five because he ignored relevant VE testimony. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 28th day of July, 2017.

_____
UNITED STATES MAGISTRATE JUDGE